Markets, Inc. et al. I please the Court. My name is Bernard Kleinman, and I represent— Mr. Kleinman, it's been so long since— It has been, Judge, and I mutually miss you. Miss you. In any event, Your Honors, this case, I'm not going to—the facts are pretty much laid out in my brief as to what happened in the FINRA proceeding. And then subsequently, Mr. Fiorilla, through other counsel, filed the action that Judge Castel dismissed under 12b. I just want to focus on two issues. There's the broader issue of whether the Court should recognize that if fraud is perpetrated on the state court in the circumstances of a Rooker-Feldman argument, whether that fraud—there should be some type of a fraud exception to the Rooker-Feldman doctrine. What if the fraud was presented to the New York state courts here? I mean, that's what I understand from the record is that it was raised a number of times with the New York state courts that, look, this was a Florida bar proceeding. It wasn't a Florida court proceeding. It wasn't fairly litigated down there. How can you rely on this? But since that was presented to the New York state courts, and that's the claim of fraud that you have, how are we not bound to the New York state court's resolution of that? I'm sorry, Judge. The fraud itself is not that the Florida bar had rendered an opinion as to the binding effect of the alleged settlement, okay? The fraud that was alleged was the mischaracterization by CGMI's attorneys in front of Judge Ramos as to what the nature of that Florida adjudication was. But that was presented to Judge Ramos the second time, right? It was presented the second time, and he said, no, I'm going to find that that issue has been adjudicated. But the record shows that there were numerous arguments that were raised as far as whether, in fact, that argument was fully argued, that issue was fully litigated in front of Judge Ramos. If you look at the December 2013 transcript, which is in the record, I think it's A184, I mean, Judge Ramos is pretty direct. I mean, he says, the petition is granted in all respects. Thank you very much. The decision is on the record. Take your appeal. He had really no interest in going into any of this in any detail whatsoever. And his final order, which was issued on January 4th of 2014, which is at A36. But in the hearing before him, and this is at A13, it was said to him, they represented that there was a finding of fact in Florida that the court understood it to be a Florida court. In fact, it was an informal inquiry by an intake attorney. That's Mr. Tripp. That's what I mean. It was presented to him, and it was presented to the New York State Courts, this nature of the fraud, which was the misrepresentation of what happened in Florida. And he made the finding that, in fact, that decision of the Florida bar was a valid adjudication, which went to the merits of whether the settlement was valid or not. I mean, I think that this kind of leads to the second issue, which I don't think you can really divorce the two of them, in that the complaint that was filed with Judge, that was in front of Judge Castell, raised a number of different causes of action. And one of those causes of action was seeking damages based upon the decision of the fact that Mr. Fiorella, and also as trustee, had suffered damage as a result of the actions of CGMI. There was never a request, there was never an action in front of Judge Ramos and the State Supreme at 60th Center asking for damages. The appearance of Mr. Fiorella and his counsel was always in the position of being a respondent, or in the AD, trying to get the AD to convince them that Judge Ramos had reached the wrong conclusion by disregarding what had happened during the lengthy FINRA hearing. What that complaint, the third cause of action, said, wait a second, we suffered financial damages. We're the plaintiff here, we're the move-ant here, we're seeking our sum damages. And there was never any ruling on whether Fiorella had actually suffered any damages. I understand, Judge Droney, that separating these two out is incredibly difficult, and it's very, very difficult under the circumstances. But I think that here, Judge, the counsel for, who drafted the complaint, and filed that complaint in front of Judge Castell, tried to separate and argue that there were actual damages to the party, to Mr. Fiorella, the trustee, which were never litigated in front of Judge Ramos. In fact, Judge Castell, in his decision, he says, when he's discussing Rooker-Feldman and why Rooker-Feldman merits dismissal of this case, he says, and it's at asterisk three in the Westlaw site, he says, the plaintiff must complain of injuries, Rooker-Feldman requires the requirement, the plaintiff must complain of injuries caused by state court judgment. There was never a complaint by Fiorella that he suffered injuries of a financial nature. He was always in front of Judge Ramos. He was no longer on the bench, but he was always in front of Judge Ramos for the purpose of trying to convince the commercial court judge that, wait a second, there was a valid arbitration here, city group participated fully, they presented witnesses, they made even motions that this settlement was a valid settlement. The FINRA arbitrator said twice they ruled no, this is not a valid settlement, they make a finding of damages of like $10.75 million or whatever it is. And only after that does CGMI go into State Supreme. There can be no doubt in front of this court or anywhere that had CGMI won in front of the arbitration panel and Mr. Fiorella then turned around under Article 75 of the CPLR and sought to vacate that, CGMI would be in the same position as I am now because they'd be saying, wait a second, there was a full adjudication, due process, CGMI's counsel appeared, they argued, they filed multiple motions. What I'm asking for here, and this maybe goes beyond what the court can do, is I've argued in front of courts a lot of times and one thing I always kind of remember is a quote that unfortunately I never heard it, but it's always ascribed to Chief Justice Warren, and in arguments he would, when he was hearing arguments, one of the last arguments he would present to a lot of government lawyers would be, well, at the end of the day, is it fair? Because fairness is an essential element of this. In the Southern Railway case, which I cited in my brief. Can I ask you about the fairness question? Yeah. Because it does seem a little odd that they're all relying on a New York bar grievance proceeding for resolving this issue. Well, it was a Florida bar decision, and I agree with you, Judge Geronimo, that actually I don't believe, and I think I discussed that in my brief, that a decision of the Florida bar, and I've read decisions of the New York bar and other state bars when there's been a complaint, and this was a complaint about fees. This wasn't a complaint that they were engaged in malpractice or the lawyer . . . Well, let me finish my question. Yeah, go ahead. I'm sorry. It is a bit odd in the record, but I'm not saying that's enough to overturn the New York state proceedings, but my question is, but it's also odd. I couldn't find anything from the FINRA arbitration proceedings indicating why that panel did not honor the settlement agreement, why they proceeded with the hearing. There's nothing I could find about that, which is odd, too. Well, there were motions made by CGMI's counsel, and the FINRA panel twice, I believe, and it's not in the brief, I don't remember the pages of the record, I can provide that later if you like, just basically said that they denied those motions. They didn't render any opinion whatsoever. So, we really don't know what their reasoning was, but at the end of the day, and I agree with you 100% that I would be shocked and I would be loathe to appear in front of a judicial panel arguing that the merits of an issue have been fully adjudicated by a decision, a letter decision of a bar review committee or a grievance committee, whether it's in New York or Florida or anywhere else, that adjudicates, that is determinative of an issue, and the key issue here. I mean, it's not like this is a minor issue that the Florida bar dealt with, okay? This went to the root of whether Mr. Fiorilla was going to end up being whole or at least be made partially whole. So, I think that that kind of, and I do understand that I face a sisyphant task here, that I'm pushing the ball uphill, but I think that if you look closely at the record and at the arguments raised, at least allowing my client the opportunity to present, at least go through discovery, and as you said earlier, I'm sorry, as one of the judges said earlier, I think there was a reference to one of the other cases today, well, don't you think maybe this is something that maybe should be, you're waiting through discovery, maybe on a Rule 56 motion you can decide this? Well, maybe that's the appropriate place for this to be decided, if at least there is some discovery and a decision whether in fact that settlement decision, that settlement in Florida, that settlement rather between Fiorilla and CGMI was in fact a valid settlement. I think also in the brief I cite that that settlement, the FINRA itself has specific rules as to what a valid settlement is, and it requires the signatures of all of the parties, and the settlement never had those signatures. So under FINRA rules, which the court, which Judge Ramos should have recognized, but he didn't, it should have been that that settlement was never a binding settlement, notwithstanding the lawyers may have said, yeah, it's settled. And if, you know, I'm sure any practicing lawyer fully well knows, yeah, I've got a settlement, I talked to my adversary, and I've had this on more than one occasion, unfortunately, where my client says, yeah, okay, I'll agree to what you decided. The pleadings of the settlement's drawn up, I submit the settlement to the other side, they say, well, we're making some minor changes, I call my client, he says, forget it, I'm not going to settle for $30,000, I want $50,000. I call my adversary and say, forget it, the settlement's blown up. It happens all the time in practice. And if you have any other questions, but I appreciate the time, Your Honors. Thank you very much. Sorry. May it please the Court, Audra Soloway from Paul Weiss. I'm here on behalf of the defendants' appellees, Citigroup Global Markets and Mr. Mulcahy. Some background, I think, is in order here. Mr. Fiorella is a serial litigant who has refused to accept since 2014 that the state court vacated an arbitration judgment in his favor. He filed this federal court action only after taking multiple appeals in the New York state courts. The state court judgment that he is seeking to void through this federal action has twice been upheld by the Appellate Division First Department, and the New York Court of Appeals has denied leave to appeal further. Mr. Fiorella has also attempted unsuccessfully to take the vacated arbitration judgment to the courts of France and seek to seize cities' assets abroad in satisfaction of the vacated judgment. The district court correctly held that each of Mr. Fiorella's claims are foreclosed by the Rooker-Feldman Doctrine. For the most part, and I'll come back to the one exception, Mr. Fiorella does not dispute that the four elements of the Rooker-Feldman Doctrine are satisfied here, that he lost in state court, that he complains of injuries caused by the state court judgment, that he invites review and rejection of the state court judgment in federal court, and that the state court judgment was rendered before he filed his federal court action. And with one exception, which I'll come back to, all of these elements Mr. Fiorella concedes have been satisfied here. So what he is asking this court to do is to create a new exception, one that has never been recognized by this court, for what he is calling a fraud. There are several problems with this. One, there was absolutely no fraud. Full stop. Second, this court has never recognized a fraud exception, and in the handful of courts that have recognized a fraud exception, it would not apply to these facts where Mr. Fiorella had a full and fair opportunity to raise the purported fraud in the state court and thus was not in any way deprived of due process and there were no procedural impairments that affected the state court's ability to review its own judgments. I'd like to spend a minute on the fraud and I'd like to get to one of . . . I'd like to focus on that because I talked to him about it. Yes. If we were to recognize a fraud exception, it seems to be the fraud exception is more at the end of the state court proceeding. A new territory is raised saying that whole proceeding was infected by fraud. That seems to be the fraud case. It's not where the fraud was litigated in the state court. That is the fraud exception to Rooker-Feldman. What's your view on that? Let me place what happened just into the timeline a little bit, Your Honor. The first hearing that was held in front of Justice Ramos, the issue that was being addressed was, was there in fact a settlement between Mr. Fiorella and Citi before the FINRA hearing commenced? And while engaging with that topic, Citi's counsel was presenting the evidence, some of which had become uncovered during this disciplinary proceeding in Florida. And the evidence that we were focused on, Your Honor, first, was the fact that both sides had presented to FINRA in writing the fact that a settlement had occurred. That was the primary evidence of a settlement, that both sides in writing manifested that a settlement had occurred. My colleague from Paul Weiss, who was at oral argument presenting, then said, and Your Honor, to add to that, there was this disciplinary action in the Florida Bar. And by the way, it was not about fees. It was because Mr. Fiorella accused his lawyer of settling without his permission. And in defending himself, his lawyer said, I did have your permission, and he put in the evidence showing that Mr. Fiorella had in fact consented to the settlement. And the Florida Bar, the tribunal that's being referenced in the papers, in this disciplinary proceeding concluded that, in fact, Mr. Fiorella's counsel had had his permission to settle and did in fact go and settle that case. So we were not arguing, Your Honor, that this was race judicata. We were not arguing that the court couldn't, the New York court couldn't consider this issue because a Florida tribunal had already decided it. We were merely presenting to the judge the evidence that there had been further proceedings and evidence had come out as part of this disciplinary proceeding. And when Justice Ramos said, and what did the disciplinary proceeding hold, we answered the question. And the purported fraud here is that when the judge said, what did the Florida court say, instead of saying, Your Honor, it was a tribunal or it was a disciplinary proceeding, we answered the question and said that they found that there had in fact been a settlement. Now, there is no question Justice Ramos was not misled in any way by that colloquy on the record. And we know that for several reasons. One is there was a motion for reconsideration filed, and Justice Ramos himself said, this is frivolous. And you'd think that if Justice Ramos had been misled, he would have known that. But we also know it because the briefs that were presented by Citi in that matter correctly described this as a disciplinary proceeding. We did not argue that there was some race judicata impact of the disciplinary proceeding. We simply laid out the facts. And when Justice Ramos rendered his written decision after that oral argument, and by the way, it was weeks if not several months afterwards, Justice Ramos in his order said, in light of the fact that this matter was in fact settled and that all parties so advised the panel and FINRA in writing, and then he only says in a parenthetical, which a Florida tribunal has found as fact in a proceeding that these respondents commenced. It's a parenthetical. He clearly is relying on the written evidence presented by both sides to FINRA that there had been a settlement. There is no question he does not think he is bound by a Florida court having actually issued a ruling and him having any race judicata impact on his proceedings. So, Your Honor, I would respectfully submit that the only reason the disciplinary action was raised was because additional evidence had come out through it. It did not mislead the state court. Putting that aside, this very issue was raised in the very first appeal. In the very first appeal in the appellate division, this argument was made that city's council had misled Justice Ramos during the oral argument, and it was rejected by the appellate division. And it has been rejected repeatedly since then. So not only have they had multiple bites of the apple in state court, but they do not get another bite of the apple now, Your Honor, in federal court. So there was no fraud, and they certainly don't get to argue here that there's some fraud exception that this court has never recognized that should be created for the purpose of this case. I want to address the sort of secondary argument, which relates, as I understand it, only to the third cause of action, which is the fraud claim. Mr. Fiorella is arguing that there somehow are some sort of separate damages that are recoverable through the federal court action and therefore would not be foreclosed by the Rooker-Feldman doctrine. And while he was arguing, Mr. Kleinman, I think, made a very important concession that demonstrates that that's not true. And what he said is that it was only before Justice Ramos to determine that the arbitration judgment was valid. And I think that says it all. There were no separate damages pleaded in the fraud claim in this case. The only damage that Mr. Fiorella is pursuing in the state court case is that he wants his arbitration award back. He wants his arbitration award back. And the thing that is preventing him from having his arbitration award back, whether to assert it here in the United States or to take it abroad and try to assert it there, is the state court judgment. And that is how we know that every injury that Mr. Fiorella has stems directly from the state court judgment. That is what he is here complaining about. And what this court previously has said in the Holbrook decision, or the Hoblock decision, excuse me, is that you cannot evade the Rooker-Feldman doctrine by calling your claim something else. He can't call it a fraud claim and say it has separate damages and thereby evade the Rooker-Feldman doctrine. He has to identify what those separate damages are. And here he has not done so. There is no separate claim. In my remaining minute, I just want to make one additional point, which is that even if all of Mr. Fiorella's claims were not foreclosed by the Rooker-Feldman doctrine, they certainly would be foreclosed by race judicata. The New York courts, as I mentioned earlier, have addressed over and over again these claims. There have been multiple appeals taken of every theory that has been asserted in these papers. In fact, every one has been asserted and raised with the New York courts. And race judicata law doesn't even require that. All it requires is that Mr. Fiorella had the opportunity to raise these claims, but he has, in fact, raised them all. And they have been rejected both by Justice Ramos, by the appellate division on several occasions, and the Court of Appeals has twice denied leave to appeal further in this case. And just in terms of where these issues are in the record, Mr. Fiorella contests that he has raised these issues. However, if you look at A-208, the question presented in his state court appeal, this is his first state court appeal, you'll see that the fraud claim is squarely presented. It's addressed as well in other places in his brief, including A-252 to 253. Citi did, in fact, respond to it, and that's in A-317 to 318. And the final point on this, the appellate division in the last go-around held that Mr. Fiorella had a full and fair opportunity to present this argument previously, and we would respectfully submit that it is race judicata that these claims are race judicata on this record. Thank you very much. Before you sit down, I have a sidebar kind of question. Do you have a theory about why there was a proceeding in France as opposed to any other place? I mean, that's really a question for Mr. Kleinman, and perhaps he'll have a chance to answer it, but do you have a theory? I do have a theory, Your Honor. Tell us your theory. I will tell you my theory. My theory, there is absolutely no connection whatsoever between France and this dispute, so it's not because of some connection to France. My theory is that Mr. Fiorella figured out that the French courts, unlike most other courts in the world, will not consider as a totally dispositive matter the fact that the home court has vacated the arbitration judgment, and so he thinks it's the best forum for him to go into and get another bite at the apple because he's going to argue that under French law, and we're going to disagree, but he's going to argue that under French law, the French courts don't care what the home court did in vacating the judgment, and he gets to start totally from scratch in France. That is his argument. Or in Mauritius. I did see some parallels there, Your Honor. Yes. Thank you. Mr. Kleinman. Yeah, I know I didn't reserve any time, but if I can just address the issue in France. The issue in France was based upon the fact that under French civil law, if there is a decision by an arbitration panel, that arbitration decision can be enforced in France, and there was the Fenrir panel made a decision and awarded Mr. Fiorello, as I said, $10 million in change. The attorneys in Paris have filed, as they did appropriately under French civil law, all the necessary pleadings in order to seize assets of CGMI that would address this award by the Fenrir panel. I last spoke to French counsel yesterday, and I said to the French counsel, so what's the story? Has Citigroup, as he has argued over and over, they have a law firm in Paris, and they can litigate this and they can stop it. Have they made anything after you filed all your pleadings and all? Have they made any appearance? Have they presented Judge Ramos' decision and said, wait a second, Your Honor, here in Paris, this case should be stopped because we have a valid court order? The answer is no. French counsel has done nothing whatsoever. So as far as everything that's going on in France... Nothing whatsoever, meaning? They have made no appearance. They sent some correspondence to Mr. Fiorello's French counsel saying, you know, you can't do this and so forth, but if they want it stopped, if they have a valid basis for having it stopped, they need to go in front of the French judge, which at least as of yesterday I was told by French counsel they have not done anything like that. All right, thank you. You want a quick answer? Very briefly, Your Honor, just to be very clear, the original French proceedings that were filed that are the topic of this motion were in fact dismissed by Mr. Fiorello when the anti-suit injunction was entered. Then in December of 2018, he started new French proceedings. That's what he's talking about. He is in contempt of the state court anti-suit injunction, and we have contempt proceedings pending right now in the New York State court because he is acting in violation of its injunction. And we, by the way, have not been doing nothing in France. We have filed the necessary appeal. And your contempt proceeding is pending in... Currently pending in the New York State Supreme Court, Your Honor. In New York. That's right. We reserve the seat. Thank you, Your Honor. And we are adjourned. Court is adjourned.